***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing parties have shown good grounds to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendants at all relevant times.
3. OneBeacon Insurance Company was the carrier on the risk on August 3, 2000 and Montgomery Mutual Insurance Company was the carrier on the risk on November 7, 2000.
4. All parties are properly before the Commission and the Commission has jurisdiction over the parties.
5. Plaintiff's dates of injury are August 3, 2000 and November 7, 2000.
6. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
7. The following exhibits were stipulated into evidence at the hearing before Deputy Commissioner Garner:
Stipulated Exhibit 1 — North Carolina Industrial Commission Forms
Stipulated Exhibit 2 — Plaintiff's medical records
Stipulated Exhibit 3 — Pre-trial agreement
Stipulated Exhibit 4 — Recorded statement
Stipulated Exhibit 5 — Interrogatories
8. The following exhibits were entered into evidence at the hearing before Deputy Commissioner Garner:
Plaintiff's Exhibit 1 Dr. Patrone's note dated March 13, 2002
Plaintiff's Exhibit 2 Dr. Patrone's note dated June 12, 2002
 Defendants' Exhibit 1 Letter from plaintiff to defendant dated November 27, 2002
Defendants' Exhibit 2 Form 18
9. The issues before the Commission are whether plaintiff sustained an injury by accident on August 3, 2000 and on November 7, 2002 and if so to what compensation is she entitled.
 ***********
Based upon the all of the competent evidence of record and the stipulations of the parties, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the Deputy Commissioner hearing plaintiff was 49 years old and is a high school graduate. Plaintiff was employed by defendant-employer as a sales assistant for two securities brokers and her job duties were essentially sedentary in nature. Prior to working for defendant-employer, plaintiff worked for First Union in a similar capacity.
2. Plaintiff testified that she was sitting at her workstation on August 3, 2000 and as she leaned over and pulled open a heavy bottom file drawer, she felt a sudden, sharp pain in her neck radiating into her left arm. Plaintiff continued to work for the remainder of that day and also worked for the three subsequent days before going out of work on August 7, 2000. On August 7, 2000 plaintiff was seen at the Wake Medical Emergency Room and she reported an increase in neck pain with movement that began on July 31, 2000. Plaintiff denied any known injury and did not mention any incident involving a file drawer.
3. On August 10, 2000, plaintiff was seen by Dr. Kenneth Moore at Nash General Hospital with complaints of shoulder and arm pain. Plaintiff reported that her pain started on August 5, 2000 with non-traumatic etiology. Plaintiff also reported that her gradual pain reminded her of the pain she experienced with a prior herniated cervical disc. Approximately fourteen years prior to her August 3, 2000 injury, plaintiff had surgery to repair a herniated C6-7 disc. The pain plaintiff experienced with the prior injury was on the opposite side of her neck than the pain after the August 3, 2000 incident. After the surgery plaintiff was able to work normal full-time employment until the August 3, 2000 incident.
4. On August 11, 2000, plaintiff was seen by Dr. Robert Allen, a neurosurgeon in Raleigh. Dr. Allen took a medical history and plaintiff did not mention any work accident or a specific injury. Plaintiff completed a medical questionnaire at that visit and indicated that her symptoms began approximately two weeks earlier and became more severe on August 5 and August 6, 2000.
5. Dr. Allen diagnosed plaintiff with acute cervical disc syndrome compatible with C7 nerve root compression. Dr. Allen ordered a cervical MRI which showed tiny central herniated discs at C2-3, C3-4 and C4-5 with a posterior ridging disc at C6-7. Four days later, a post-myelogram CT was taken which was suggestive of a left sided C6-7 herniated disc.
6. On August 17, 2000 Dr. Allen performed a left C6-7 partial hemilaminectomy, which he felt was a clinical success.
7. Plaintiff returned to work for defendant-employer on October 2, 2000 and worked half days through October 16, 2000. Plaintiff testified that she continued to have pain in her neck and left arm during this time. Plaintiff's final visit with Dr. Allen was on October 16, 2000 at which time she was released to return to full-time work. Dr. Allen testified that his full-duty release was based upon his understanding that plaintiff was returning to a job which did not require heavy lifting. Plaintiff returned to work on a full-time basis the next day. Plaintiff testified that she had a dull pinching in her left arm and a sharp pain in her neck upon returning to work on October 17, 2000. Dr. Allen testified if he had known plaintiff was complaining of pain a few weeks after her surgery, he would have reconsidered releasing her from his care.
8. Plaintiff testified that her November 7, 2000 injury occurred in the exact same fashion as her August 3, 2000 injury, when she experienced increased neck pain upon opening the same file drawer. Plaintiff worked for the remainder of the day on November 7, 2000 and also worked for the rest of that week without reporting any injury to defendants. Plaintiff testified at the Deputy Commissioner hearing that she did not realize that these incidents might be compensable on-the-job injuries until she talked with an Industrial Commission ombudsman. After this discussion with the Commission, on November 27, 2000 plaintiff contacted Clifton Foster, her supervisor in Richmond, Virginia, about the incidents. Mr. Foster told plaintiff that he was unable to identify the workers' compensation insurance carrier, so plaintiff could not file a claim. Plaintiff was not provided any forms or reports to complete and was never advised by Mr. Foster of the appropriate carrier.
9. On Monday, November 13, 2000 plaintiff was seen at the Wake Medical Emergency Room for neck pain. Plaintiff reported that she had awakened with neck pain the previous Saturday.
10. On November 16, 2000 plaintiff was seen by Dr. Dennis Bullard, a neurosurgeon in Raleigh, with complaints of pain in her left shoulder and arm, severe neck pain, and numbness in the index and long fingers. Plaintiff had a marked decrease in range of motion in her neck. Plaintiff did not give a history of a specific incident that caused the onset of her pain.
11. Plaintiff returned to Dr. Bullard on November 20, 2000 and he reviewed her MRI results, which did not reveal a recurrent herniated disc at C6-7 that he had suspected. Plaintiff had a small central disc at C3-4, a central disc at C5-6 with ridging, and a lateral small disc at C6-7. Based upon the MRI results, Dr. Bullard's impression was that plaintiff had musculoskeletal pain and he recommended physical therapy. Dr. Bullard testified that plaintiff's MRI did not show any surgical lesion and he could not identify any specific mechanism for her pain complaints.
12. Following Dr. Bullard's recommendation, plaintiff participated in physical therapy from December 4, 2000 until January 19, 2001. At that time, Dr. Bullard released plaintiff to return to work for four hours a day with a ten pound lifting restriction and referred her to a pain clinic.
13. On January 24, 2001, plaintiff was seen by Dr. Edward Bratzke at Pain Management Consultants. Dr. Bratzke's impression was that plaintiff had post-cervical laminectomy pain syndrome. Plaintiff treated with Dr. Bratzke for the next several months. On March 30, 2001 Dr. Bratzke released her from his care.
14. Plaintiff returned to Dr. Bullard on April 12, 2001 and he recommended an EMG and nerve studies of plaintiff's left arm as well as a repeat cervical MRI. Dr. Bullard reviewed the MRI on April 23, 2001 and found mild spondylosis at C6-7, changes at several levels, but no conditions that warranted surgery. On April 27, 2001, Dr. Bullard released plaintiff to return to work without restrictions.
15. Plaintiff returned to Dr. Bratzke and was seen on September 5, 2001, December 13, 2001, March 6, 2002 and May 7, 2002 and continued under his treatment at the time of the Deputy Commissioner hearing. Dr. Bratzke did not restrict plaintiff's ability to work following these visits, but at his deposition he stated that plaintiff was disabled from competitve employment of eight hours a day, forty hours per week, maintaining regular attendance and production.
16. Dr. Bratzke gave an opinion on causation as follows:
 "It's more likely that her symptoms occurred as a result of — or were aggravated by both injuries as well as the surgery that was required to remove the herniated disk. In other words, the surgery that was required to remove the herniated disk, in addition to the subsequent injury in November, both probably contributed to and aggravated the problem."
17. Plaintiff has not returned to work since November 13, 2000 and has not looked for work since that date.
18. The Commission finds plaintiff's testimony credible concerning the incidents that occurred on August 3, 2000 and November 7, 2000.
19. The Full Commission finds based on the greater weight of the credible evidence that plaintiff sustained an injury by accident on August 3, 2000 and an aggravation of her injuries on November 7, 2000 and that these incidents caused or significantly aggravated plaintiff's cervical condition and resulting disability.
20. As a result of the compensable injuries by accident on August 3 and November 7, 2000, plaintiff was disabled from her regular employment with defendant-employer or any employment since November 13, 2000.
21. Plaintiff timely filed her claim within the two-year limitation. Plaintiff provided reasonable excuse for failure to file written notice within thirty days of the date of the injuries. Defendants have not shown any prejudice resulting from plaintiff's failure to file written notice within thirty days.
22. The medical evidence presented does not show the relative contribution to plaintiff's injuries and disability resulting from the August 3, 2000 incident or the November 7, 2000 incident. Therefore, apportionment is not possible and both carriers shall be jointly and severally liable for payment of plaintiff's compensation.
23. Defendants failed to file a Form 22 and there is no stipulation concerning plaintiff's average weekly wage. Based upon the wage information provided by defendants on the Form 19, the Commission finds that plaintiff's average weekly wage was $850.24, which yields a compensation rate of $566.85.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, the employee must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. §97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222, 224,374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989). Under the specific traumatic incident theory, plaintiff must prove that the injury occurred at a judicially cognizable time, although not necessarily at a specific hour or day. Fish v.Steelcase, Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994),cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995); Richards v. Town ofValdese, supra.
2. Plaintiff proved by the greater weight of the credible evidence that she sustained a compensable back injury from a specific traumatic incident August 3, 2000 and an aggravation of that injury on November 7, 2000. N.C. Gen. Stat. § 97-2(6).
3. As a result of the compensable injuries by accident, plaintiff is disabled and is entitled to total disability compensation at the rate of $566.85 per week for the periods August 7, 2000 through October 17, 2000 and from November 13, 2000 until the present and continuing until she returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29. Defendants are entitled to a deduction for any wages paid during these periods.
4. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, for so long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or lessen plaintiff's disability. N.C. Gen. Stat. §97-25.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees awarded below, defendants shall pay to plaintiff total disability compensation in the amount of $566.85 per week for the period August 7, 2000 through October 17, 2000 and from November 13, 2000 and continuing until plaintiff returns to work or until further order of the Industrial Commission. Compensation which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees awarded below and a deduction for any wages paid to plaintiff during this period.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injuries on August 3, 2000 and November 7, 2000 for so long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of plaintiff's disability.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. Twenty-five percent of the accrued compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
4. Defendant carriers are jointly and severally liable for all amounts owing to plaintiff and said amounts shall be split equally between the two carriers.
5. Defendants shall pay all the costs.
This the ___ day of July 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd